**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DIANE GARRITY, ESQ., as Court-
Appointed Guardian ad Litem for S.N.G., a
minor,

    Plaintiff,

vs.

                                                           Civ. No. 19-95 JAP/JHR

THE GOVERNANCE BOARD OF
CARIÑOS CHARTER SCHOOL and
VERNON JARAMILLO, individually,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    Plaintiff Diane Garrity, Esq., in her capacity as court-appointed guardian ad litem for S.N.G., a minor, brought Case No. 19-cv-95 to recover damages for alleged constitutional violations, battery, negligence, and Title IX violations by Defendants the Governance Board of Cariños Charter School ("Governance Board") and Vernon Jaramillo. *See* COMPLAINT (Case No. 19-cv-95, Doc. 1-1). Plaintiff V.M., in her capacity as mother and legal guardian of L.A., brought Case No. 20-cv-340 against the same defendants for purported constitutional violations, negligence, and Title IX violations. *See* COMPLAINT (Case No. 20-cv-340, Doc. 1). On May 14, 2020, Plaintiff Garrity asked the Court to consolidate the two cases. *See* PLAINTIFF'S MOTION FOR CONSOLIDATION PURSUANT TO RULE 42(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE ("Motion for Consolidation") (Case No. 19-cv-95, Doc. 64). Defendants oppose the Motion. *See* DEFENDANT GOVERNANCE BOARD OF CARIÑOS CHARTER SCHOOL'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONSOLIDATION (Case No.

19-cv-95, Doc. 67); *see also* Defendant Jaramillo's RESPONSE TO MOTION TO CONSOLIDATE CASES (Case No. 19-cv-95, Doc. 68). Additionally, Defendants seek leave to file a surreply to respond to new issues raised in Plaintiff's CONSOLIDATED REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTION FOR CONSOLIDATION (Case No. 19-cv-95, Doc. 70). *See* DEFENDANTS' JOINT OPPOSED MOTION FOR LEAVE TO FILE A SURREPLY TO PLAINTIFF'S CONSOLIDATED REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTION FOR CONSOLIDATION ("Motion for Leave to File Surreply") (Case No. 19-cv-95, Doc. 72).[1] The Court will deny Plaintiff Garrity's Motion for Consolidation and Defendants' Motion for Leave to File Surreply.

## BACKGROUND

Both cases relate to alleged misconduct by Defendant Jaramillo during his tenure as Chancellor and CEO of Cariños Charter School in Espanola, Rio Arriba County, New Mexico. Case No. 19-cv-95, Doc. 1-1 at ¶¶ 2–3; Case No. 20-cv-340, Doc. 1 at ¶¶ 2, 4.

In Case No. 19-cv-95, Plaintiff Garrity asserts that Defendant Jaramillo used his position of authority at Cariños Charter School to remove S.N.G. from class almost daily during her 7th grade school year. Case No. 19-cv-95, Doc. 1-1 at ¶ 13. At that time, S.N.G. was twelve years old. *Id.* Defendant Jaramillo was purportedly grooming her for an intended intimate and sexual relationship. *Id.* Plaintiff Garrity claims that to advance that goal Defendant Jaramillo told S.N.G. that she was pretty and beautiful, that he loved her, and that he dreamed about her at night. *Id.* at ¶ 14. During this period, Defendant Jaramillo also repeatedly held and stroked S.N.G.'s hands. *Id.* He even went

---

[1] The Court does not consider facts raised for the first time in Plaintiff's CONSOLODATED REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTION FOR CONSOLIDATION (Case No. 19-cv-95, Doc. 70) in this Memorandum Opinion and Order.

so far as to purchase her a cell phone—ostensibly to help S.N.G.'s mother, a single parent. *Id.* at ¶¶ 14, 15.

At the beginning of S.N.G.'s 8th grade school year, Defendant Jaramillo allegedly called S.N.G. out of class and into his office, where he "seized her, grabb[ed] her buttocks, caress[ed] her and kiss[ed] her on her lips." *Id.* at ¶ 17. Defendant Jaramillo also informed S.N.G. of his interest in establishing a romantic relationship with her. *Id.* S.N.G. was thirteen years old. *Id.* Following the purported sexual assault, S.N.G. immediately reported Defendant Jaramillo's conduct to school employees. Case No. 20-cv-340, Doc. 1 at ¶ 21. Thereafter, she withdrew from Cariños Charter School. *Id.*

S.N.G.'s report ultimately led to an investigation into Defendant Jaramillo's conduct by Defendant Governance Board. *Id.* at ¶ 25. Following the investigation, Defendant Governance Board took no formal or informal action to curtail Defendant Jaramillo's authority. *Id.* at ¶ 29. Furthermore, Defendant Governance Board did not speak with teachers or students about Defendant Jaramillo's conduct, nor did it institute any type of sexual abuse, sexual assault, or sexual harassment trainings. *Id.*

Meanwhile, in Case No. 20-cv-340, Plaintiff V.M. claims that when L.A. was in elementary school, Defendant Jaramillo would tell L.A. that she was "special." Case No. 20-cv-340, Doc. 1 at ¶ 13. He would also give her hugs and make other physical contact with her. *Id.* L.A. briefly left Cariños Charter School but returned for sixth grade. *Id.* at ¶ 14. Plaintiff V.M. maintains that when L.A. returned, Defendant Jaramillo would use his position of authority at the school to remove L.A. from class and other activities in an attempt to pursue a sexual relationship with her. *Id.* When he would do this, L.A. would report to Defendant Jaramillo's office, where he would lock the door. *Id.*

During these encounters, Defendant Jaramillo would move L.A.'s chair to a "blind corner" of his office so that no one could observe them. *Id.* at ¶ 15. There, he would engage in touching, such as sitting so that his knees touched L.A.'s knees, putting his hands on her thighs, wrapping her into tight frontal hugs, rubbing her hips, back, and the back of her neck, resting his hands on her buttocks, trying to stick his fingers under the back of her bra, playing with her hair, sticking his thumb in her mouth and rubbing it, lightly touching her breast to make it seem like an accident, kissing her on the forehead, playing with her hands, rubbing or holding her hands, and pulling her face close to his as if he wanted her to kiss him. *Id.* Plaintiff V.M. further alleges that Defendant Jaramillo would tell L.A. that he loved her and ask if she loved him too. *Id.* at ¶ 16. He would tell L.A. that she was one of his favorites, ask if she ever came to his office just to see him, and tell her that he dreamed of her. *Id.* He would even tell L.A. that she was beautiful in the school hallway if no one else was around. *Id.*

In addition to the inappropriate touching and comments, Defendant Jaramillo gave L.A. gifts. For example, he allegedly gave her candies, including a chocolate rose. *Id.* at ¶ 17. At the same time, Defendant Jaramillo was telling Plaintiff V.M. how much he was trying to help her daughter. *Id.* He encouraged Plaintiff V.M. to suggest that L.A. willingly go to his office. *Id.* Meanwhile, he made L.A. promise not to tell anyone what was occurring in his office. *Id.* at ¶ 18.

The claims in the two cases are similar but not identical. Plaintiff Garrity and Plaintiff V.M. have brought substantive due process claims and equal protection claims against Defendant Jaramillo under 42 U.S.C. § 1983. Case No. 19-cv-95, Doc. 1-1 at 7; Case No. 20-cv-340, Doc. 1 at 14, 15. Plaintiff Garrity and Plaintiff V.M. are both pursuing claims of negligent operation of the premises, violations of Title IX, and violations of substantive due process and equal protection under § 1983 against Defendant Governance Board. Case No. 19-cv-95, Doc. 1-1 at 8, 9; Case No. 20-cv-

340, Doc. 1 at 16, 18–19. Only Plaintiff Garrity is pursuing a battery claim against Defendant Jaramillo for his conduct towards S.M.G. Case No. 19-cv-95, Doc. 1-1 at 8.

## STANDARD

Under Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court *may* . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a) (emphasis added). Whether to grant a motion to consolidate is in the trial court's discretion. *See Shump v. Balka,* 574 F.2d 1341, 1344 (10th Cir. 1978). If a court determines a common question of law or fact exists, it must then weigh the interests of judicial convenience in consolidating the cases against the delay, confusion, and prejudice that consolidation might cause. *See Servants of the Paraclete v. Great American Insurance Co.*, 866 F. Supp. 1560, 1572 (D.N.M. 1994). The party moving for consolidation bears the burden of demonstrating that consolidation is desirable. *Id.*

## DISCUSSION

At first blush, these cases appear to share common questions of law and fact, and indeed they do.[2] That said, there are important differences that require the cases to proceed separately.

First, the nature and frequency of Defendant Jaramillo's actions towards S.N.G. and L.A. is relevant to the analysis of each plaintiff's substantive due process claim. "[I]t is well-settled that a teacher's physical mistreatment of a student offends the substantive protections afforded by the due process clause if this mistreatment rises to 'the high level of a brutal and inhuman abuse of official power literally shocking to the conscience.'" *N.F. on behalf of M.F. v. Albuquerque Pub. Sch.*, 2015 WL 13667294, at *2 (D.N.M. Jan. 30, 2015) (quoting *Abeyta by & Through Martinez v. Chama*

---

[2] To be sure, both cases arise out of similar (albeit separate) misconduct by Defendant Jaramillo, and most of the legal claims overlap. Nevertheless, as the Court details in this Memorandum Opinion and Order, the distinctions between these two cases caution against consolidation.

*Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1257–58 (10th Cir. 1996)). The inquiry is highly fact specific. *See Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). Whether certain conduct is conscious shocking is guided by the following general principles:

> (1) a teacher's sexually motivated, unwelcome physical contact with a student is not necessarily conscience shocking, (2) inappropriate touching of a student is much more likely to be actionable under the due process clause if it involves the touching of certain erogenous zones, such as the genitals, the breasts, or the buttocks, (3) similarly, teacher abuse is more likely to be considered brutal, inhumane, and conscience shocking if it happens *more than once or repeatedly occurs over a long period of time*.

*N.F. on behalf of M.F.*, 2015 WL 13667294, at *4 (emphasis added).

As alleged in the complaints, Defendant Jaramillo groomed both S.N.G. and L.A, but the timeframe and the number of inappropriate touchings appear different. In S.N.G.'s case, for example, Defendant Jaramillo allegedly engaged in grooming behaviors while S.N.G. was in 7th grade and at the beginning of her 8th grade school year. Case No. 19-cv-95, Doc. 1-1 at ¶ 12. Those behaviors culminated in a single incident in which Defendant Jaramillo forcibly grabbed and kissed S.N.G. *Id.* at ¶ 17. Meanwhile, in L.A.'s case, Defendant Jaramillo's unwanted touching first began when L.A. was just a 4th grader and, when she returned after briefly leaving Cariños Charter School, continued through her 6th and 7th grade school years. Case No. 20-cv-340, Doc. 1 at ¶¶ 13, 14. During that time, Defendant Jaramillo inappropriately touched L.A. by, for example, pulling her into tight frontal hugs, rubbing her neck, and putting his fingers into her mouth. *Id.* at ¶ 15. Further, he repeatedly tried to establish a sexual relationship with her. *Id.* at ¶ 14. While the alleged grooming activities contain many similarities, the differences in the type of touching—such as forcible kissing versus neck rubbing—and the differences in the period these activities spanned weigh differently in the substantive due process analysis.

Second, the Supreme Court has held that to find a school district liable for Title IX violations where a teacher sexually harasses a student, a plaintiff must show that "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998). Generally, courts do not require that the school have actual knowledge that a teacher was abusing a certain student. Rather, they require "that the school have actual knowledge of a *substantial risk* of abuse to students based on prior complaints by other students." *Escue v. N. OK Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006) (internal quotation marks omitted) (emphasis in original). Actual knowledge of a substantial risk can be established when the school has prior complaints that are current and contain allegations that are similar in nature and conduct. *Cf. J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 451 (10th Cir. 2010) (describing *Gebser* and *Escue*).

Here, S.N.G. immediately reported the assault to school employees, which triggered an investigation into Defendant Jaramillo's actions by Defendant Governance Board. Case No. 20-cv-340, Doc. 1 at ¶ 21. Meanwhile, L.A. does not claim to have alerted school officials to Defendant Jaramillo's actions. Rather, L.A.'s theory appears to be that Defendant Governance Board had actual notice of Defendant Jaramillo's conduct as a "serial sexual harasser." Doc. 70 at 7. Therefore, the Title IX claims, like the substantive due process claims, require different analyses.

Of course, claims do not need to be identical for cases to be consolidated for purposes of discovery and trial, *see Garcia v. Hotel Powers, Inc.*, 2011 WL 5121131, at *2 (D. Colo. Oct. 28, 2011), but, here, despite similar allegations and legal challenges, "individual questions of

law and fact may well predominate over common ones," *Servants of Paraclete, Inc.*, 866 F. Supp. at 1573.

Moreover, Plaintiff Garrity has not met her burden of showing that consolidation would "produce *substantial* tangible efficiencies." *Anderson Living Tr. v. WPX Energy Prod., LLC*, 297 F.R.D. 622, 631 (D.N.M. 2014) (emphasis added). If anything, the Court concludes that the consolidation will result in net zero efficiencies. Indeed, Defendants assert that efficiencies gained from proceeding to trial as a consolidated action will be outweighed by a prolonged discovery period. Doc. 67 at 10. Defendants argue that liability issues, defenses, and damages will require different witnesses in each case. *Id.* at 11. They further maintain that any expert witness will have to opine on two different sets of facts, thereby further negating any efficiencies gained through consolidation. *Id.* Plaintiff Garrity does not contest Defendants' claim that discovery will be prolonged should the cases be consolidated. Instead, she counters that she and Plaintiff V.M. plan to call the same experts in each case. Doc. 70 at 11. That response, however, does not address Defendants' contention that efficiencies will not be gained through consolidation because the experts will still be required to analyze and opine on separate facts. Plaintiff Garrity further asserts that if the cases are not consolidated the parties will have to undergo extensive duplicative effort, including deposing fact and liability witnesses twice. *Id.* In the Court's view, inefficiencies resulting from deposing witnesses in both cases are negated by what would certainly be prolonged discovery if the cases were consolidated. Thus, Plaintiff Garrity has not established that substantial tangible efficiencies would result from consolidation.

Finally, the Court concludes that any judicial convenience that could be gained through consolidating these cases would be outweighed by the potential of prejudice. *See Servants of the*

*Paraclete*, 866 F. Supp. at 1572. Evidence is unfairly prejudicial if "it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment" as to liability. *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999) (quoting *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996)). Here, the inflammatory nature of the allegations against Defendants are undoubtedly prejudicial. As pleaded, Defendant Jaramillo engaged in grooming behavior with the intent to establish sexual relationships with young girls. Both complaints suggest that Defendant Governance Board knew or should have known of Defendant Jaramillo's behavior, but failed to take corrective action and allowed Defendant Jaramillo to proceed virtually unchecked.[3] A jury could conceivably find Defendant Jaramillo liable solely because he is a "bad man" and therefore worthy of punishment. Likewise, a jury could find Defendant Governance Board liable because it enabled Defendant Jaramillo. In both situations, the jury would be basing liability on improper considerations. In the Court's view, that danger is heightened because of the similarity of the allegations in both complaints. While the cases contain important distinctions that alter the legal analyses, the potential that a jury may impute certain facts from one case to the other is too high for the Court to ignore. Accordingly, the Court concludes that any judicial efficiencies that could be gained through consolidation are outweighed by the danger of prejudice to Defendants should the cases be consolidated.

---

[3] To be sure, "[e]vidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003)). But here, the potential for prejudice should the cases be consolidated goes beyond being damaging to Defendants. For the reasons described above, the Court believes that the risk of prejudice is too significant to allow these cases to proceed together.

CONCLUSION

In sum, the Court concludes that Plaintiff has not carried her burden of proving that consolidation is desirable. IT IS THEREFORE ORDERED that PLAINTIFF'S MOTION FOR CONSOLIDATION PURSUANT TO RULE 42(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE (Doc. 64) is DENIED.

Because the Court has denied Plaintiff Garrity's Motion for Consolidation, DEFENDANTS' JOINT OPPOSED MOTION FOR LEAVE TO FILE A SURREPLY TO PLAINTIFF'S CONSOLODATED REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTION FOR CONSOLODATION (Doc. 72) is DENIED as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE